The chancellors took time to deliberate, and
chancellor Mathews
afterwards delivered the decree of the court:
This cause had been pretty fully argued some time ago, but it then appearing necessary to direct an issue at law to try the right of Mrs. Elliott to a part of the tract of land in question, and also to ascertain the quantity which might be deficient, and its value; that issue was accordingly directed, has been tried, under the verdict now brought up. The cause has undergone a second and very full argument at the bar, and now rests for the final decision of this court,
*580 In opening the cause the counsel for the complainant has thrown a stumbling block at the very threshold, viz. a pointed objection to the admission of the answers of Waring, one of the defendants, as evidence in the cause, as it tends to contradict a deed; the admissibility of which kind of evidence, is expressly provided against by the statute of frauds. Our first inquiry then must be, whether the objection is well founded. That the statute of frauds does make the provision here alluded to, there can be no doubt, but whether it is to be taken in the extent, and in the- unqualified manner now contended for, we think very questionable. This, like all other general rules, is liable to exceptions; and it is well known that exceptions in a great variety of instances have been admitted; for were all cases brought into this court to be decided on the strict letter of that statute, its tendency would be to promote as much as to prevent fraud; and this is not the first time that this court has found it necessary to make this observation. We will now examine the nature of this evidence, and see whether it will come within those rules of exception which are allowed of. How came 'Waring into this court? Was he not brought here by the complainant? He was — for he is expressly charged by complainant’s bill, as having acted improperly; and he was obliged to come forward with his answer to defend himself: hut as it is discovered that his answer goes to such an explanation of the circumstances of the transaction, as might probably lessen or defeat the objects contemplated by the bill, it is now called that kind of parol evidence, which ought not to be admitted to explain away or contradict his own deed. We have known instances when persons have been made defendants in this court, and who upon the coming in of their answers have been found to be no ways interested in the suit, their answers have been allowed to be withdrawn; but it is the first instance we have ever known, of an application to set aside the answer of a defendant, where it is material in the suit; for in what light is Waring’s answer to be taken ? He is not the only defendant; nor is it against him that the suit is particularly pointed: it is against another of the defendants, *581 Held, who having obtained a judgment at law, has been enjoined from proceeding thereon, by this court: and the question now is, whether the complainant has so much equity in his case, as to induce this court to perpetuate the injunction. And to this point of equity, Warirrg’s evidence particularly applies. We cannot garble a defendant’s answer, and admit one part, and reject another: he is bound to answer fully; and if he does not, he can be compelled to do so. Having done so, it remains for us only to say, how far it is material, or not; and what weight is to be given to it, when it is before us. Waring swears by his answer, that previous to the land in bill mentioned, being set up at public auction', be explicitly declared, that it was sold subject to a claim of Mrs. Elliott, to some part of the high land; and that the purchaser was to take it subject to that claim. That a proportionate deduction was to be accordingly made out of the purchase money, for what might be afterwards found deficient. That another tract, the moiety of this tract, purchased by Mr. Glover, on which there were no buddings, brought a much higher price than the tract now in question, although there was no difference in the then supposed quantity or quality of the land; that it was necessary to sell some quantity of land; and the quantity named was, to the best of liis information the real quantity. And that the commissioners of confiscated estates made it a general rule at all their sales, and particularly at this, to declare that the quantity of land named was to he restricted by the words more or less. To this evidence, it has been particularly objected, that a declaration of the terms of sale, at the time of the sale was improper. That a purchaser is bound by no other terms than those contained in the printed public advertisement. That if such declarations were made at the time of the sale, the complainant neither heard nor otherwise knew of them; and consequently cannot be bound by them. That the original entry in the sale book of the commissioners of confiscated estates, as wrell as the titles given him by virtue of his purchase, are contradictory thereto; as tire quantity of 662 acres are in both instances mentioned to be *582 sold, and conveyed to him; but whereas by the survey made, it appears that the commissioners had at the time of sale no pretensions to sell more than 456 acres; and that the verdict of the jury before the court, has now decided the fact to be so. That the quantity of high land, viz. 171 acres thus severed from the tract purchased, containing all the timber and wood-land, this loss is such a deterioration of the land, as will entitle him to a rescission of the original contract. As to the printed advertisements relative to this sale, it appears from that, no quantity of land was therein specified; and that the terms of sale were not to be declared till the day of sale. Whence then are we to seek for the terms of sale, if not from the evidence of Waring the commissioner, declaring what they were ? Is there any other before us ? There is not. Does it go to contradict the deed ? It does: but sub modo only; for we must take the evidence altogether, or reject it altogether. In what predicament should wc then leave the complainant? Whyjust where we found him. But take Waring’s evidence altogether, it ought with much more propriety to be considered as explanatory of, than contradicting the deed; for he declares that the quantity of acres inserted therein was intended rather to fill up the chasm (wc suppose he meant in the advertisement) than to define the precise quantity sold; as'some quantity was necessary to be mentioned: but the real quantity was to be ascertained at a future day, and deduction to be made for any deficiency of the quantity then sold. That the commissioners made it a general rule at all their sales, and particularly at this, to declare that the quantity of land named was to be restricted by the words, more or less. Thus a transaction which would be enveloped in perplexity, is clearly and unequivocally elucidated. Is it reasonable then, or did even the statute of frauds, which is a remedial statute, contemplate the rejection of such kind of evidence ? Its title will answer the question, which is “ to prevent fraud.” Can any fraud be attached to the letting in of this evidence ? We can see none. On the contrary, we think it very proper for the explanation of a transaction, which would otherwise bo *583 inexplicable. But it is contended that notwithstanding all this may be true, yet as the complainant was not made acquainted with these circumstances, he ought not to be bound by them. It is immaterial whether he was acquainted with them or not. Wilson who was' the real purchaser, and in whose shoes he now stands, must have been acquainted with them; for is it at all prabable that a man will at a public auction, bid for property then under the hammer, without knowing the conditions under which it is to be sold ? Such a degree of irrationality we will impute to no man. Does cash or credit make no difference to purchasers ? Does short or long credit make no difference ? Daily instances inform us, that both causes have a powerful influence. There is another ground for us to conclude that the terms mentioned by Waring, were known; for the moiety of the tract purchased by Wilson, although equal in every respect to that immediately before purchased by Glover, was sold for little more than half the price. Why then should there have been such á depreciation of this tract, unless it was from the uncertainty of what the purchaser was to get by his purchase ? But as he at the same time was apprised that he was to pay for no more than he was really to possess, it ivas an inducement to purchase. If it was to be admitted as a legitimate excuse, that a purchaser did not know the terms of sale at the time he purchased, no man could ever be certain that he had sold his property, which would be productive of such a scene of confusion as would be attended with the most serious inconveniences. The words more or less, we think in this case, ought to carry more Weight with them than they are usually entitled to. Custom will in many transactions be taken as a governing rule. In this case, Mr. Waring says it was a general rule of the commissioners of confiscated estates to declare at all their sales, and particularly at this, that the quantity of land named was to be restricted by these words. We think the regulation a very provident and proper one, under their circumstances; for as it was the decided interest of every person whose property was to be thus sold, to keep them as much in the dark as they possibly could, *584 they must necessarily have had numberless difficulties id encounter, to come at even an uncertain knowledge of the nature of, and incumbrances on, such property: certainly in few, if in any instances, was it to be expected. To restrict the words, more or less, to rules adopted in general cases, would he wrong. Indeed there is no precise rule; the words are generally limited or extended, to suit the circumstances of the case; and in this case we think they ought, when connected with other circumstances, to be considered as ingredients of considerable weight- in the decision of the cause. We will now turn our attention to •that part of the cause in which the defendant Reid is immediately interested. He is brought here by an injunction against bis proceeding at law, on a bond of complainant, as assignee thereof, for a valuable consideration. It appeal's that this bond was for a part of the purchase money of the land, and was given three years after the purchase was made; after complainant was aware of some deficiency in the quantity of land, though uncertain what.-. It was given voluntarily; and why is it now required to, he cancelled ? Because it is said the land for which it was given, is so deteriorated as to become inadequate to the purposes for which it was purchased. Ought not the complainant then to have used the precaution to have this clearly ascertained, before he gave this bond ? His not having done this, but executing this deed in the deliberate manner he did, without any kind of reservation, is a striking instance that he at that time had no other view, than that of an abatement of price in the purchase. Is the case so materially altered since,' as to entitle him to a total rescission of the contract? We think not; for although the land, by the loss of the wood, might be considerably lessened in value, yet when it is considered that a very trifling part of the swamp is deficient, which is by far the most valuable part of a rice plantation, and the deduction to be made for the wood-land being high land, is equal in price to the swamp — when we consider that a bona fide assignee of a bond, will be materially injured by such a decision- — when we consider that this bond was given three years after the purchase was made; *585 that no objection appears to have been made to its validity, until a judgment at law was obtained on it, nor was any defence ever there set up, in order to rescind the contract, (which might have been done with great propriety, as it was contended by complainant’s counsel that such a defence had been frequently admitted in the court of common pleas) although the deficiency was then fully ascertained; nor did the complainant apply to this court for an injunction, till February, 1793, upwards of three years after the judgment; and that the purchase was made subject to a defalcation in some part of the high land, we cannot consistently with our duty grant the prayer of the complainant, in the extent prayed for. This case has been assimilated to that of Glover’s case, decided in this court. "We think the two cases materially different. In that of Glover’s, there was no notice of any deficiency; the contract was never carried into complete execution, as he uniformly resisted the contract; there was no third person implicated in the manner the defendant Reid is in this case; and there was no building of any kind on the part purchased by Glover; therefore this case has no pretensions to a similar decision with that of Glover’s. But as we think the commissioners of confiscation were very remiss in one part of this transaction, which was in not having a proper survey made of the land for upwards of four years after the sale was made, their principals must answer for their laches: because though the complainant might at his own risk, have taken possession of and cultivated tfie land, yet as he did not choose to run the risk of incurring an action to be brought against him as a trespasser, we cannot blame him: but this excuse cannot avail him after the fact was ascertained by a regular survey, which was returned in 1788. On the whole of the case we are of opinion that the complainant is entitled to a deduction of 3501. 11s. conformable to the verdict of the jury, and the further sum of 71i. 15s. for the thirty-five acres of swamp which is also deficient, to be deducted from the original bond given by Mm to the commissioners of confiscation; and no inte *586 rest to be allowed on the balance, but from the day of th’e date of the survey made and returned by Trotti. That the injunction granted against the bond, in the hands' of the defendant Reid, be dissolved, except as to the interest appearing due thereon, prior to the date of the sur-yey aboveméntioned, which must be deducted therefrom. The reason for'the distinction made between tho bond originally given, and that held by Reid, is, that the latter was a special grant by act of the legislature to Mrs-. Yilleponteux, prior to tlie act of assignment to the creditors of G-. Dupont.'- The legislature having therefore parted with'so 'much' of the property over which they had a control," they " could hy !tiieir subsequent act, give no more than the remainder that was due on, the original contract, after releasing the purchaser from the payment of as much as was-overcharged him, agreeable to the contract made by their agents with the purchaser at the time of sale. The bill must therefore be dismissed with costs."
Chancellor Matthews having resigned in November, 1797, the legislature did not fill up thevkcancy; and there then remaining but one chancellor, in office, he could not (under the act of 1784) proceed to try causes, and pronounce final decrees. The court remained in that situation, until December, 1799, when Aedanus Burke and William Marshall were elected chancellors.